Mr. Justice Barnard,
of the Supreme Court of the District of Columbia, who sat with the Court in the place of Mr. Justice Van Orsdel, delivered the opinion of the Court:
Under the said act of July 1, 1902, the tribal government of the Cherokee Nation was to continue until March 1, 1906. All revenues belonging to the tribe were to be collected by an officer appointed by the Secretary of the Interior, and all moneys belonging to the tribe were to be paid out under the direction of *478 the Secretary of the Interior, and he was to cause to be paid out all just indebtedness of the tribe existing at the date of the ratification of the said act, before any pro rata distribution could be made.
The act does not expressly declare what the Secretary shall do with the remaining land, after making the allotments of 110 acres to each member of the tribe properly enrolled; but we think it may be assumed that so long as the tribal government was to continue, Congress intended that the community property not allotted should remain community property, and that the common charges and expenses should be paid therefrom before such surplus would be distributable to the individuals.
The said act of April 26, 1906, however, provides for the partition of the remaining land by sale, and for the payment of the proceeds into the Treasury. If this had been the only provision of the new legislation, we think the contention of the complainants would be correct, and that they would be entitled to receive all the net proceeds of sales and the balance of funds remaining in the Treasury; but the same act extends the time for completing the rolls, and authorizes the enrolment of additional members of the tribe, to wit, all minor children living on March 4, 1906, whose parents had been enrolled, or whose applications for enrolment were pending on April 26, 1906; and directs that allotments shall be made to such children, illegitimate children taking the status of the mother; and it provides for equality, by payments in cash, if the lands are not sufficient for making such allotments.
This act of April 26, 1906, was amended by the act of June 21, 1906 (34 Stat. at L. 325, chap. 3504), and, in the last-named act (34 Stat. at L. 340, chap. 3504), some other names were added to the roll of the Cherokees entitled to shares of said tribal property.
This legislation clearly indicates in our opinion, that Congress intended to retain control of the surplus lands and funds of the Cherokee tribe until such time as the enrolment of members should be complete, and until the final dissolution of the tribal government. We think it had the undoubted right to so retain control, not only of the Indians themselves (as is provided *479 by the said acts, which limit their right to dispose of or lease-their several parcels of land after allotment to them), but of the tribal government, the roll of members, and of the undivided property of the community or tribe; and that Congress did not,, by said act of July 1, 1902, intend to constitute the complainants and those they represent, the exclusive owners, as tenants in common, of the undivided community or tribal property.
Being of that opinion, from a careful consideration of the statutes and authorities, we find that the decree of the learned justice of the Supreme Court of the District of Columbia, sustaining the demurrers and dismissing the bill, was correct, and the same will therefore be affirmed. Affirmed.
Thereafter, on motion of the appellees the decree of this court, was amended so as to dissolve the preliminary injunction granted before the hearing on the merits.
On November 17, 1911, oh application of the appellants, an appeal to the Supreme Court of the United States was allowed..